The origins of the Certificate of Appealability Requirement date to 1908, when Congress acted on a pernicious, racist, and false mythology that lynchings were caused not by white supremacists But when they, in subsequent years, amended and changed, they were acting on other grounds, were they not? There is no real legislative history. You think that, for example, that the Congress that passed AEDPA was motivated by preventing lynchings? Not necessarily, Your Honor, but it's important to look at what the original purpose was, what the stated purpose is. And that's the only purpose that we have. Well, the only purpose you have, and I'm just piling on, I'm afraid, AEDPA is passed under President Clinton. He's kind of an open door to whatever the Republicans want. AEDPA is passed restricting in a whole range of ways the availability of habeas corpus. I see nothing in there to suggest that lynching had anything to do with AEDPA. You're correct, Your Honor, that there's nothing in AEDPA's legislative history that discusses lynching. And I'd want to point out that the element of the legislative history and the original purpose of this law that's linked to lynching is relevant as we examine rational basis and whether or not when we look... Why would it be relevant to the rational basis review? It is relevant because even in rational basis, you look at the stated purpose. So we're looking at that... That's not my understanding of rational basis review. I mean, my understanding is we just think of whether there could be a legitimate reason for the rule, the restriction that we're talking about, and we only get to consider the sort of actual stated reasons at higher levels of scrutiny. Not exactly, Your Honor. You're correct that under rational basis, a court can look to any post hoc hypothetical reason, but you still start with the stated purpose, and then you can move on to legislative history, and then on to any asserted purpose. And so we see the court say this, for example, in Meriwether v. Lockyer. There, the court starts with the stated purpose, looks at the legislative history, and in a footnote explicitly says the legislative history can be relevant to the rational basis inquiry because it is important to... When you're looking at whether or not the purported interests are rational, you can look back at the legislative history and see if that undermines it. And we see the Supreme Court do this in Claiborne, in Moreno, where they start looking at the statute, and in then balancing the purported interests that are then asserted, concludes that really when you look at all of it, it's animus that's motivating this statute. But I also just want to make clear that our argument as to why the certificate of appealability is unconstitutional does not hinge on these racist origins. It is unconstitutional as compared to any of the now asserted legislative purposes behind the law. So from a basic level, it simply is irrational and arbitrary to try to address frivolous appeals, delays, burdens on court, finality, by applying a requirement only to one half of litigants. It doesn't rationally further the purported interest in reducing frivolous appeals because by its terms, the standard is something more than the absence of frivolity. So you necessarily have this certificate of... Is there a constitutional right to an appeal in a habeas case? There is no constitutional right to an appeal, but the Supreme Court's long line of rights to access to the court's cases make clear that where there is a system of appellate review in place, there's a fundamental constitutional right to access that appellate system on fair terms. So everyone is entitled under the Constitution. Why is it unfair to have this COA system when we know that an awful lot of appeals in habeas cases are pretty much groundless and Congress has decided that this is an effective way to sort out those that are at least barely plausible and can go forward and those that are not sufficiently plausible and not go forward? Well, Your Honor, it is overbroad as to that purpose. Again, as I just was mentioning, by its terms, it excludes more... it requires something more than the absence of frivolity. And we know from looking at numerous cases that make it up to the Supreme Court are ultimately granted. They were initially denied certificates of appealability. So we know that there's a mismatch that's having... They were initially denied certificates of appealability. How did they get to the Supreme Court? By appealing those denials of certificate of appealability. So what you have is a process that inserts complication and delay. And if you don't have the dogged persistence to appeal all the way up to the Supreme Court and have the Supreme Court grant cert, you're knocked out. And I'll also point out that if the goal is to reduce frivolous appeals in habeas, there's no reason to exclude the state from that. We know that the state also files frivolous appeals. We know that those appeals cause delays of years. So when we're in rational basis review, we don't ask for a perfect fit. Even in rational basis review, a case like this where it's so overbroad and underinclusive at the same time can lead to the conclusion that it's not rational. It's not rational to address frivolous appeals by only addressing it as to one group of litigants. The question is, is the classification rationally related to the purpose? It may be that it is rational to require some kind of screening for frivolity. Is it rational to require that only for habeas petitioners? I mean, I would imagine it would be if they were much more common for the petitioner to be filing the appeals. Well, first of all, we don't have any basis in the record to support that. That is a presumption that an entire group of individuals only files frivolous appeals. That kind of presumption that's unsupported by any factual basis should not be able to support this kind of restriction on a fundamental right, let alone in rational basis. It also is not sufficient. Let me say this. I think you know this, but you may not know it in detail. Here's how the COA system works in our circuit. I don't know the other circuits. You ask for a COA from the district court. District court grants, doesn't grant, grants on one issue, denies on the other. That denial of COA can be appealed to the Ninth Circuit. We routinely review denials of COA, and with some frequency grant COAs more broadly than the district court did. And I've been doing this for 20-some years. The standard we apply in terms of whether or not a COA grant is pretty close to is there something just barely plausible about it. I mean, that's how the system works. I appreciate that, Your Honor, and I recognize that the Ninth Circuit may be applying a standard that is perhaps closer to this purported interest. That is also, I think I can take judicial notice of it, that that's also the standard in the Second Circuit, exactly the same in that respect for the Ninth Circuit. And I would be surprised if that's not the situation in most circuits. Well, the standard set out in the law itself is requiring a substantial showing of a denial of a constitutional right. That in and of itself is not frivolity. Substantial showing is substantial. And the Supreme Court has also repeatedly said it requires something more than the absence of frivolity. So whether or not certain judges or certain circuits are applying a different rule, that is the one that's in the legislation. That is the one that the Supreme Court has said. And we know that even under application, perhaps, of a standard that is more trained on frivolity, many meritorious cases are missed. Many meritorious cases are denied certificates of appealability. And even when they're granted... We know that. How do we know that? We know that from many of the cases we cite. Miller L. is one. Buck v. Bell is another. Slack, which came out of the Ninth Circuit, is also one where there is an initial denial that went up and wasted three years on a certificate of appealability. And so the other thing I'll point you to is a study that we cite in our briefs that focused on one subset of cases where the magistrate judge had recommended granting the habeas request. The district court disagreed and denied the request and also denied the certificate of appealability. And so there we have a situation where, likely, there's a federal judge, a magistrate judge, who has determined that there is merit to this, and yet the certificate of appealability requirement is cutting off access to the appellate court. So then what happened in that case, was there a request from the circuit for a COA? I don't have each of those cases looked at in the study on hand. I don't believe that all of them ended up going to the circuit and getting a certificate of appealability, if I'm remembering correctly. And even if the COA process works and you're ultimately granted a COA, whether at the district court or the circuit court, it doesn't prevent delay. And that is, if we ignore the racist origins... Well, if you're talking about delay, this system is a total pain in the neck. If I could redraft that statute, I would do it in a second. Well, exactly. But that's not the question in front of me. Well, the question is, is the requirement rationally related, if we're in rational basis, and again, we believe we should be in strict scrutiny land, but under rational basis, is this a rational response to the government's purported interests in reducing delay and reducing judicial burden? As you see from your own experience, it's not. And it makes sense that it's not. When you reframe it that way, it's easy to say, no, but I don't really believe that that's how we do rational basis review, right? So, I mean, my understanding of rational basis review is not we just ask something rational. Does it make sense in all its applications? And, you know, is this the best possible way to address this problem? But rather, you know, it's, you know, can we, it's something, you know, can we imagine that there is some legitimate basis for the burden that they're imposing, right? And there's, I mean, there has been articulated, you know, a rational basis that is, you know, on its face, a legitimate thing for Congress to have considered. You know, so, and, you know, it may, we don't require that the choices that they make work, you know, optimally, right? So then what I hear you arguing is like, this is a suboptimal system, but where do we, I mean, I don't think, I mean, that we have a case saying we can strike it down because it's suboptimal. Well, it's not just suboptimal. It is irrational to address these purported interests, by, through the classification. And that's what we look at. We don't ask, is it rational to try to reduce frivolous appeals generally? Is it rational for Congress to have chosen to single out this one group to prevent them from moving forward in the same way that every other federal civil litigant can with an appeal as of right? And that distinction, that classification is not rational. And we can look to cases like Claiborne. We can look to cases like Moreno. I've already pointed the court to Merrifield, where that is rational basis review, but the court is not simply taking the word of the government and saying, well, you know, it seems like this work. There's some inquiry into, is this logical? Does this rationally make sense? And when here, when you look at it and when you think about it, does it make sense to try to reduce delays by inserting a whole separate process into habeas appeals and only preventing delays when they are caused by petitioners? The state can and does delay as much as it wants. And I see I'm coming down to time, and unless you have any more questions at this moment, I'd like to reserve for rebuttal. Thank you.  May it please the court, good morning. Mark Fowler for the state of Washington, assistant attorney general. I don't know where to begin. The fatal flaw in my opponent's argument is that there's a mischaracterization of the dual classification between the litigants at the stage between the respondent and the petitioner. What the key and I think fatal flaw of their argument is that they talk about efficiency versus the right or the need to pursue the appeal process further. What's missing is the core element of AEDPA, which is comity, which is that the petitioner is from the get-go is in a disparate state, a disparate and dissimilar situation from the respondent from the start of habeas. Habeas is a bar to re-litigation from the get-go. From 2254D, it bars litigation. So the re-litigation burden is always upon the petitioner, even at the appellate stage. Respondent, on the other hand, has an entirely different set of motivations for pursuing claims. It is seeking to uphold the finality of judgment of a presumptively correct state court judgment of a federal claim. You know, I'm not sure I agree with this presumptively correct. I mean, it may or may not be. And the reason we have habeas is so it can be challenged. I have to say, I see nothing in the statute that says we must presume that the state is correct. I see lots of little provisions that set up various standards of review and so on. But to say that it's presumptively correct, to me, is an overstatement. No, Your Honor. If I could disagree with you respectfully. The Supreme Court has even said recently, well, a few years ago, in Harrington v. Richter, that habeas corpus acts as, in a way, of a collateral estoppel, is res judicata effect. The thing has already been decided. There's no need to revisit it. The plain reading of the statute from the start, 2254D1, states clearly, you shall not relitigate unless the state somehow got it wrong. The presumption of correctness certainly does apply, and it's been specifically stated with regard to factual findings in 2254D, as you well know. But the decision itself comes clothed with the presumption that it is constitutionally sound until the petitioner, the petitioner only, proves that the state court adjudication somehow entered into a field or a level of extreme dysfunction. That's what habeas is for, is to correct gross miscarriages of justice in the state court. Respondent, on the other hand, has no burden in habeas from the start. The filing of a petition doesn't require the respondent to file an answer. That's why there's no default procedure. The disparity of burden between the two litigants is from the start, and it carries through all the way, including that comity principle, into the appeal process as well. They're not the same. Equal protection does not demand equal outcomes. It's equal application of the law, but you can equal protection doctrine certainly allows disparate treatment of dissimilarly situated positions of parties, and that's exactly what is the respondent versus the petitioner in habeas on appeal. I have to also disagree with my counsel about the mention of every other civil litigant in other Federal remedies. Habeas is sui generis. I mean, there are problems with it, certainly. Your Honor has mentioned that. You know, Justice Stephen Breyer, now retired, once said in an oral argument that, characteristically grabbing his forehead, that habeas law is as complex as a tax code. Certainly there are difficulties and there are burdens, but they're meant to be burdensome upon the petitioner. So said the Supreme Court in cases like Coleman versus Thompson, which is a seminal case dealing with exhaustion doctrine and procedural default. It's supposed to be hard. They almost expressly say, I'm paraphrasing, but they said that exactly. It's supposed to be hard on the petitioner because of the core principle of comity and respect for the state court judgment. So if Your Honor's not having other questions, there's not a colorable claim of either due process or equal protection here, and we ask that you affirm the decision. No further questions. Thank you. Thank you, counsel. I'd like to briefly address the point that was made about comity. So, first of all, by the time a petitioner has been granted habeas, and that's where the certificate of appealability requirement would not prevent the state from appealing as of right. All of those difficult habeas burdens have been overcome, and the state really has no strong, strong interest in preserving an unconstitutional conviction, an unconstitutional and unreasonable, as the habeas statute terms it, decision. They're appealing because they don't agree that that is the right decision. Certainly, and we believe that. So, I mean, wasn't it clear that a major motivation of Congress in passing HEDPA was the perception that habeas was being misused to delay the carrying out of final judgments in the state court, in particular the death penalty, and that, therefore, the attempt, whether successful or not, of HEDPA was to cut down through various mechanisms, including the certificate of appealability mechanism, the ability for litigants to delay the application of final judgments in the state. The state itself has the opposite motivation. They want to uphold the final decision of the state, and that's why Congress felt that you didn't have to have a certificate of appealability in their case. Well, Your Honor, the question of an interest in finality is not solely about the finality upholding an unconstitutional conviction. There's also a finality interest in acquittals and in promptly reaching the right decision. And in that case, if we're only focused on finality, why give the state the opportunity to appeal rather than go back to state court, retry the person, or resentence them? So finality isn't served by giving the state the right to appeal but not the petitioners. And also as to comedy, I want to point out that this is, by the time we get to the certificate of appealability, the question is about a federal appeals court's jurisdiction to review the federal district court's decision. And the federal court system has a great interest in ensuring that federal district courts correctly apply the law, correctly apply the Constitution, and that habeas, which is of fundamental importance to our Constitution and to our democracy, is made meaningful. First, that is an argument against AEDPA as a whole but not an argument about the specific point you're raising. Well, respectfully, Your Honor, I disagree because I think the fact that you're at the point where there's a final judgment, all of AEDPA's other burdens have been applied, and the question is simply, within the federal court system, can you have a federal appeals court review a federal district court decision? So I think that distinguishes it from all of the other AEDPA provisions, which I agree are very burdensome. So the comedy interests at play are different, and I see that I am over time. So unless you have further questions, I'll rest. Thank you for your arguments, counsel. This matter is submitted, and we are adjourned for today.
judges: FLETCHER, SUNG, Rakoff